Filed 3/27/23 In re J.Q. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.Q., a Person Coming Under the Juvenile Court Law. | C096652 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2021-0000189) |
| Plaintiff and Respondent, | |
| v. | |
| A.G., | |
| Defendant and Appellant. | |

Appellant A.G. (mother), mother of the minor, J.Q. (minor), appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Mother's sole contention on appeal is that the San

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) because the Agency did not contact extended family members to inquire about the ICWA. (25 U.S.C. § 1901 et seq.; § 224.2.) We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are not at issue, and we do not recite them in detail. We limit our recitation of the background to those facts relevant to the ICWA inquiry and notice requirements.

On May 6, 2021, father of the minor, G.Q. (father), and mother (collectively, parents), brought six-week-old J.Q. to the hospital with multiple unexplained injuries. The minor was taken into protective custody. The parents were subsequently arrested for felony willful cruelty to a child, infliction of great bodily injury, and felony infliction of injury on a child. They remained incarcerated in the local jail pending criminal trial for the remainder of the dependency case. On May 11, 2021, the Agency filed a petition regarding the minor, alleging serious physical harm under section 300, subdivision (a); failure to protect under section 300, subdivision (b)(1); and severe physical abuse under section 300, subdivision (e).

As to the child's Indian heritage, on May 7, 2021, the investigating social worker asked the parents at the hospital about possible Native American ancestry, and both denied any Native American ancestry. Based on this information, the social worker filled out an ICWA-010 form stating that there was no reason to believe that the ICWA applied to the minor. Subsequently, at the detention hearing, the juvenile court inquired with the parents about possible Native American ancestry and each replied, "No." On June 18, 2021, the Agency filed the ICWA-020 forms completed by the parents on May 7, 2021, which reflected mother's and father's response that they did not have Native American ancestry.

2

The Agency's October 2021 jurisdiction/disposition report showed the parents each denied having any Native American ancestry and that there was no reason to believe the minor was an Indian child within the meaning of the ICWA. The report described the minor as a "Filipino and Hispanic female." It was reported that each parent invoked their Fifth Amendment right and chose not to make any statements for the report. Counsel for each parent also instructed the social worker not to have contact with mother or father. As a result, no family background was obtained for the report. The report showed that the minor was placed in the home of the maternal aunt and uncle. The minor had visits with the maternal grandmother. It was reported that no paternal relatives had contacted the Agency for visits with the minor.

Following a contested jurisdictional/dispositional hearing, the juvenile court ordered reunification services bypassed as to both mother and father, found the ICWA did not apply, and set a selection and implementation hearing pursuant to section 366.26. The Agency's May 12, 2022 section 366.26 report reflected that there was no reason to believe the minor was an Indian child within the meaning of the ICWA. On July 7, 2022, the juvenile court held the contested section 366.26 hearing. During the hearing, mother indicated that there was an error in the Agency's report because the report stated the minor was Hispanic and Filipino, but mother wanted the court to know that the minor was "full Filipino." The juvenile court found the minor adoptable, determined no statutory exceptions to adoption applied, and terminated mother's and father's parental rights.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends that the Agency's inquiry into the minor's possible Native American ancestry was insufficient because, although the parents denied Native American ancestry, there is no evidence the Agency contacted any of the known extended

3

family members to inquire whether they knew of possible Native American ancestry. We disagree.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056 (*G.A.*).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.,* subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian

4

child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Mother cites section 224.2, subdivision (b), which imposes a more extensive duty to inquire about Indian ancestry if a child is placed in the temporary custody of a welfare department (§ 306) or probation department (§ 307): "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).)

The Agency does not dispute mother's claim that the record does not show that the Agency made any inquiry of any of the minor's extended family members, despite frequent contact with several of the maternal relatives regarding the minor's placement. The Agency argues, however, that any error is harmless because the record does not support a reason to believe that the minor may be an " 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 (*Dezi C.*).) Recently, our Supreme Court granted review in *Dezi C.*, and we anticipate further clarification on this issue.

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and a duty of documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when the agency fails to discharge its now broad duty of inquiry. Agencies have often conceded error and, therefore, disposition of the issue on appeal has turned on whether the error was prejudicial. Although reviewing courts generally agree that reversal is dependent on showing prejudice, or a miscarriage of justice, approaches for assessing prejudice have varied. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698 [father did not have to show prejudice from the lack of initial inquiry; father's failure to

5

make affirmative representation about his possible Apache heritage did not render harmless trial court's failure to obtain parental notification of Native American status and failure to ask the parents questions about their heritage on the record]; *Dezi C., supra*, 79 Cal.App.5th at p. 779, rev.gr. ["agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding"]; *In re J.C.* (2022) 77 Cal.App.5th 70, 80 [where agency's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, remand is required]; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [parent asserting failure to inquire must make an offer of proof or affirmatively claim Indian heritage on appeal]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 [reversal required where record demonstrates agency failed in its duty of initial inquiry and where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child].)

In this court's prior decision addressing this issue, *G.A., supra*, 81 Cal.App.5th 355, review granted, both parents repeatedly denied Indian ancestry and the record showed the child welfare agency attempted to contact other family members, but they were not responsive. (*Id.* at pp. 359, 362.) The mother claimed that, to demonstrate prejudice, she only needed to show " 'there were sources of information readily available to respondent that were not consulted.' " (*Id.* at p. 362.) We rejected her contention and determined that the evidence derived from the initial inquiry " 'was sufficient for a reliable determination' " and the agency had no duty to inquire beyond that which it did. (*Id.* at p. 363.)

Here, both in writing and during the detention hearing, the parents each denied any Native American ancestry. Additionally, the record shows that mother advised the court that the minor was "full Filipino" on both sides, correcting an error in the Agency's

6

report describing the minor as Hispanic and Filipino. Thus, the Agency had no evidence whatsoever of a tribal link. Assuming the Agency had a duty to interview extended family under the circumstances presented here, a parent claiming ICWA deficiencies following termination of parental rights must show prejudice from the Agency's failure to conduct such interviews. (See *G.A., supra*, 81 Cal.App.5th at p. 364, rev.gr.; *Dezi C., supra*, 79 Cal.App.5th at pp. 781-782, rev.gr.; *In re Darian R.* (2022) 75 Cal.App.5th 502, 510.)

Mother's reliance on *In re Benjamin M.* is unpersuasive. There, the child welfare agency could not locate the minor's father and did not obtain any information about Native American ancestry from the minor's paternal side. Although the agency had access to the father's brother and sister-in-law, it failed to ask them about potential Native American ancestry. In concluding that this error was prejudicial, the appellate court reasoned that the missing information was "readily obtainable" and "likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M., supra*, 70 Cal.App.5th at p. 744.) Here, in contrast to *In re Benjamin M.*, both mother and father were available, although they did not cooperate in providing family history to the Agency, and they each denied any Native American ancestry on multiple occasions. Due to mother's and father's refusal to provide any family history to the Agency, the Agency lacked any information about paternal relatives. While inquiry of the maternal grandmother and maternal aunt and uncle may have been readily obtainable, it was unlikely to "bear meaningfully" on whether the minor was a member or eligible for membership in a federally recognized American Indian tribe under the ICWA where mother answered this question by correcting the record in court to state that the minor was "full Filipino." We therefore reject mother's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated the [minor's] Indian ancestry." (*In re Darian R., supra*, 75 Cal.App.5th at p. 510; see *In re Rebecca R., supra*, 143 Cal.App.4th at p. 1431 ["The burden on an appealing parent to make an affirmative

7

representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal"].)

We cannot say that remanding this matter to allow the Agency to specifically ask maternal relatives whether they have Native American ancestry is likely to shed meaningful light on whether the minor is an Indian child. Indeed, mother's consistent denial of any Native American ancestry on her side and insistence that the minor is of Filipino heritage on both sides makes such an inquiry even less likely to be fruitful. We therefore conclude there is no showing of prejudice from the Agency's failure to interview extended family members in this case and any error was therefore harmless.

### DISPOSITION

The orders of the juvenile court are affirmed.


      KRAUSE      , J.


We concur:


    HULL      , Acting P. J.


    RENNER     , J.